## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**ANUJ CHOPRA**,

      Plaintiff,

v.

**CITY OF GRANDVILLE**, a Michigan Municipal Corporation;
**CONSUMERS CREDIT UNION**, a Michigan nonprofit corporation;
**DARIN RETIMAN**, **TANYA SAWICKI**, **KRISTOPHER GRICE**, all individuals sued in official and individual capacity; all Defendants sued jointly and severally,

      Defendants.

Case No.

HON.

---

Damian D. Nunzio, Esq.  (P47319)
THE NUNZIO LAW FIRM, P.C.
Attorney for Plaintiff
29 Pearl St NW
Suite 415
Grand Rapids, Michigan  49503
(616) 336-8100

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff, **ANUJ CHOPRA**, by and through his Attorney, **THE NUNZIO LAW FIRM, P.C.**, and his complaint, states as follows:

### INTRODUCTION

1.      On February 3, 2017, Anuj Chopra (hereinafter referred to as "Anuj") was criminally charged by the Ottawa County Prosecutor's Office with Human Trafficking for Commercial Sexual Activity, a 20-year felony.

2.      The Human Trafficking Charge was based off of an allegation that Anuj was soliciting Hudsonville High School students for sex in exchange for money.

1

3.      The Human Trafficking Charge was covered by the media worldwide.

4.      Anuj's wife, Leslie Chopra (hereinafter referred to as "Leslie") was also charged along with Anuj for Distributing Obscene Material to Children and Using a Computer to Commit a Crime.

5.      The allegations and charges against Anuj and Leslie were meritless and baseless.

6.      During the time that Anuj was charged with Human Trafficking, the Grandville Police Department (hereinafter referred to as "GPD") by and through Detective Darin Rietman (hereinafter referred to as "Rietman") investigated Anuj for a Non Sufficient Funds (hereinafter referred to as "NSF") Check Case, which was complained of by employees of Consumers Credit Union (hereinafter referred to as "CCU") located in Kalamazoo, Kalamazoo County and Grandville, Kent County, Michigan.

7.      Anuj, who is a descendant from India, opened a checking account at CCU in Grandville, Kent County, Michigan in October of 2016.

8.      Anuj conducted regular banking business activity at CCU from October 2016 until the end of January of 2017.

9.      Anuj often would go into the CCU's Grandville Branch and interact with the CCU branch manager, Tanya Sawicki (hereinafter referred to as "Sawicki").

10.     Kristopher Grice (hereinafter referred to as "Grice") was employed by Defendant CCU at Defendant CCU's main office, located in Kalamazoo, Michigan as a Collection Manager.

11.     During this period, Anuj also had a bank account with Wells Fargo in the State of Illinois.

12.     In early January of 2017, Anuj deposited two (2) checks drawn on his Wells Fargo account, into his Consumers Credit Union checking account (hereinafter referred to as "CCU account").

13.     The first check was for $10,000.00 and the second check was for $7,500.00.

14.     CCU placed a seven (7) day hold on the $10,000.00 check because of a signature irregularity.

15.     Anuj placed a stop payment on the $10,000.00 check. Anuj received no money from this check.

16.     Anuj deposited a $7,500.00 check into his CCU account.

17.     Anuj received money from the $7,500.00 deposit; however, Anuj was later informed that there were non sufficient funds to cover the $7,500.00 deposit.

18.     CCU specifically gave Anuj the opportunity to pay off the negative balance within a specific amount of time to settle and resolve his CCU account without civil or criminal penalty.

19.     Anuj's brother, Akhil Chopra (hereinafter referred to as "Akhil)" sent to CCU a check for $7,500.00 before the due date to settle Anuj's CCU account.

20.     Grice sent Anuj a letter stating that Akhil paid the $7,500.00 before the due date.

21.     CCU accepted the check and posted it to Anuj's CCU account. Anuj's CCU account reflected a balance at this point of $1.17.

22.     Unbeknownst to Anuj and Akhil, CCU reversed the $7,500.00 check; it was later learned in a letter that the check was reversed "without explanation."

23.     The reversal of the check placed Anuj's CCU account into default because Anuj's CCU account was not settled or resolved by the proscribed due date.

3

24.    CCU pursued criminal charges against Anuj by filing a formal bad check report with GPD.

25.    CCU claimed that Anuj did not pay off his negative balance and that Anuj "stole" money from Defendant CCU.

26.    During this same period of time, Anuj's Google Gmail account that he was using to communicate with CCU was "shut down" because a number of unauthorized devices attempted to access his account.

27.    When Anuj was jailed after the Human Trafficking arraignment, he was also arrested with a felony NSF charge out of Grandville.

28.    The Human Trafficking and NSF case triggered an I.C.E. Homeland Security Detainer because of Anuj's resident alien status.

29.    Anuj was incarcerated from March 1, 2017 until February 22, 2018.

30.    A Federal Immigration Judge suspended Anuj's deportation proceeding and released him until Anuj was convicted of either the Human Trafficking or NSF charges.

31.    The Human Trafficking charge was dismissed it its entirety against Anuj in May of 2018.

32.    The Distributing Obscene Material (Children) and Using a Computer to Commit a Crime charges were dismissed in its entirety against Leslie is May of 2018.

33.    The NSF case was dismissed against Anuj in November of 2018 because the Kent County Prosecutor was satisfied that Anuj presented a check for the full amount in a timely manner.

4

34.     Prior to the Kent County Prosecutor dismissing the NSF case, Anuj contacted Google to obtain information that may be helpful to defend against the NSF charge despite the fact that his Google Gmail account was closed and not accessible.

35.     Approximately five (5) months after Anuj's NSF case was dismissed, Google sent Anuj two (2) emails between Grice and Sawicki regarding Anuj's CCU account.

36.     The two (2) emails revealed that Rietman, Grice, and Sawicki conspired and fabricated a criminal charge against Anuj for the purpose of assisting the Ottawa County Prosecutor's Office in their Human Trafficking case against Anuj.

37.     The two (2) emails clearly indicate that Rietman, Grice, and Sawicki acted in concert to not only fabricate a criminal charge against Anuj, but to conceal their improper conduct.

38.     In addition to Rietman, Grice, and Sawicki acting in concert to fabricate a crime against Anuj, the Defendants also discriminated against Anuj by making negative racial remarks regarding his National Origin in conjunction with the improper conspiracy to fabricate criminal NSF charges against him.

## JURISDICTION AND VENUE

39.     This action asserts claims arising under 42 U.S.C. § 1983, the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution, and the statutory and common law of the State of Michigan, against Defendants: the City of Grandville, a Michigan Municipal Corporation; Darin Rietman, in his official and individual capacity; Consumers Credit Union, Federally Insured State Credit Union; Tanya Sawicki, in her official and individual capacity; Kristopher Grice, in his official and individual capacity; and Marissa Anderson, in her official and individual capacity.

40.     Jurisdiction is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

41.     The events and conduct giving rise to the claims in this action occurred in this Judicial District. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

42.     The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims are inextricably related to the underlying claims asserted under 42 U.S.C. § 1983.

## PARTIES

43.     Anuj is a 45-year old husband and father of one child, of Indian descent, who resides in Ottawa County, Michigan.

44.     The City of Grandville (hereinafter referred to as "Grandville") is a Michigan Municipal Corporation located in Kent County, Michigan.

45.     Rietman was at all relevant times a Detective for GPD, employed by Grandville. Upon information and belief, Rietman resides in Ottawa County, Michigan.

46.     Grandville operates, manages, and oversees GPD.

47.     CCU is a federally insured state credit union through the State of Michigan and its main office is located in Kalamazoo, Michigan and a branch located in Grandville, Kent County, Michigan.

48.     Sawicki was at all relevant times a branch manager at CCU's Grandville branch, employed by CCU. Upon information and belief, Sawicki resides in Grandville, Michigan.

49.     Grice was at all relevant times a collection manager employed by CCU at its main office located in Kalamazoo, Michigan. Upon information and belief, Grice resides in Kalamazoo County, Michigan.

50.     Anderson was at all relevant times a collection support coordinator employed by CCU. Upon information and belief, Anderson resides in Kalamazoo County, Michigan.

51.     CCU operates, manages, and oversees its employees.

52.     Each Defendant above is a "person" within the meaning of 42 U.S.C. § 1983.

## GENERAL ALLEGATIONS

### A.  Anuj Targeted by Police Beginning in June 2016 on an Unrelated Matter

53.     In the summer of 2016, Anuj was falsely blamed for circulating a nude photograph of a female student at Hudsonville High School, hereinafter referred to as "HHS."

54.     The female student was once friends with the daughter of Anuj.

55.     Parents of students at HHS not only blamed Anuj, but reported the incident to the Ottawa County Sheriff's Department in the summer of 2016.

56.     Ottawa County Sheriff's Deputy Mike Petroelje (hereinafter referred to as "Petroelje") who was assigned to HHS, investigated the circulation of the nude photograph incident by interviewing HHS students and their parents.

57.     Without any evidence or proof, Police obtained a search warrant for Anuj's home and electronic devices in October of 2016 to obtain evidence that Anuj sent the nude photograph of the student.

58.     Police seized phones, tablets, and computers from Anuj's home.

59.     No evidence was ever found that Anuj was responsible for this event.

60.     Students at HHS were warned to "stay away" from Anuj and his family.

### B.  Anuj is Charged with Human Trafficking in Early 2017

61.     Despite warnings to HHS students to "stay away" from Anuj and his family, three (3) male students befriended Anuj's daughter immediately after police searched Anuj's home in October of 2016.

62.     In early January 2017, HHS authorities and Petroelje learned that the three (3) male students were interacting with Anuj, Leslie, and their daughter.

63.     The three (3) male students were brought into the school offices at HHS and were questioned about their relationship with Anuj and Leslie.

64.     Soon after the three (3) males were questioned by HHS school authorities and Petroelje, Anuj was criminally charged with Human Trafficking of a Minor for Commercial Sexual Activity, a 20-year felony.

65.     Leslie was criminally charged with Distributing Obscene Material to Children and Using a Computer to Commit a Crime, two felony charges.

66.     The alleged male victim, in both charges against Anuj and Leslie, was a "friend" of the female HHS student whose nude photograph circulated among the HHS students and parents of the students at HHS.

67.     Anuj's charge was based off of an allegation that he was soliciting HHS students for sex in exchange for money.

68.     Leslie was alleged to have transmitted inappropriate and obscene pictures from her phone to the allege male victim.

69.     Both criminal charges and complaints against Anuj and Leslie were baseless and without merit.

70.     HHS is located at 5037 32nd Ave., Hudsonville, Ottawa County, Michigan.

71.     The criminal charges against Anuj and Leslie were highly publicized and covered by the media worldwide.

72.     Anuj was charged on February 1, 2017 and arraigned in the 58th Judicial District Court Hudsonville, Ottawa County, Michigan on March 1, 2017.

8

73.     Ottawa County Sheriff Detective Michael Tamminga (hereinafter referred to as "Tamminga") was assigned as the lead detective to oversee the charges against Anuj and Leslie.

**C.  Defendants Fabricated Criminal NSF Charge Against Anuj to Strengthen Prosecution of Anuj's Human Trafficking Case**

74.     In October of 2016, Anuj opened a checking account at CCU at of their branch credit union in Grandville, Michigan.

75.     Anuj regularly conducted banking activity at CCU's Grandville branch.

76.     Anuj also had an account with Wells Fargo in the State of Illinois.

77.     On January 9, 2017, Anuj deposited a $10,000.00 check, check number 5104 (hereinafter referred to as "#5104") into his CCU Account drawn on his Wells Fargo account.

78.     After Anuj deposited #5104, CCU placed a seven (7) day hold on the check because of an irregular signature that appeared on #5104.

79.     Because Anuj was not able to draw money immediately after he deposited #5104, he placed a stop payment on #5104.

80.     Anuj emailed Sawicki that he put a stop payment on #5104 because CCU would not immediately honor #5104.

81.     Anuj did not receive any cash from and after depositing #5104.

82.     Sawicki responded to Anuj by email and acknowledged that Anuj put a stop payment on #5104 and that he (Anuj) did not receive any cash after the deposit.

83.     Sawicki "apologized" to Anuj for any "trouble" this transaction caused him.

84.     On or about January 18, 2017, CCU returned #5104 for NSF.

9

85.     On January 11, 2017, Leslie, a co-signer on Anuj's checking account deposited into Anuj's CCU account, check # 5108 in the amount of $7,500 drawn on Anuj's Wells Fargo account (hereinafter, "#5108").

86.     Anuj received $7,500.00 after #5108 was deposited.

87.     On January 20, 2017, #5108 was returned NSF and Anuj, after bank fee adjustments owed CCU $7,039.17.

88.     On January 24, 2017, Grice sent Anuj a letter to his home address that his CCU account was overdrawn in the amount of $7,039.17.

89.     The January 24, 2017 letter also stated that Grice would accept full payment from Anuj's brother, Akhil Chopra (hereinafter referred to as "Akhil") if the payment was made by January 29, 2017.

90.     In fact, Grice states in the January 24, 2017 letter, "I understand that you are dealing with a family emergency and I am willing to accept the full payment from your bother Akhil Chopra.  Failure on your part to do so will result in further action."

91.     Grice also states in the January 24, 2017 letter, "if we [CCU] do not receive payment of the entire overdrawn amount by January 29, 2017, we [CCU] will take further action to recover the entire balance of your account and refer it to the collection agency."

92.     On January 25, 2017, Akhil sent Grice an email stating he was sending $7,500 to CCU to be deposited into Anuj's overdrawn checking account.

93.     On January 25, 2017, Akhil sent check #148 in the amount of $7,500 (hereinafter, "#148") to CCU.

94.     On January 27, 2017, Grice sent a letter to Anuj at his home address stating CCU received #148 for $7,500.

95.     On January 27, 2017, #148 was presented to CCU Grandville Branch.   CCU Grandville Branch stamped the following on the back of #148:

> **"Consumers (Grandville, MI)**
> **4350 44th St. 49418**
> **01/27/17 – 06:52:4"**

96.     On January 28, 2017, CCU sent Anuj a letter to his home address regarding his overdrawn account, "Balance due: ($1.17)".

97.     On January 31, 2017, Wells Fargo sent Anuj a letter to his home address stating, "We [Wells Fargo] reached out to Consumer's Credit Union and we [Wells Fargo] were informed that the check [#148 in the amount of $7,500] was paid on 01/27/2017."

98.     CCU confirmed that Anuj's overdrawn checking account had been timely paid on January 27, 2017, two days before the due date of January 29, 2017.

99.     In a letter dated February 10, 2017, Akhil was notified that the check he sent, #148, was "presented and then reversed by Consumers Credit Union.   No reason was given regarding this transaction."

100.     Upon information and belief, no employee from CCU ever contacted Anuj after January 28, 2017 and notified him that CCU had reversed check #148 presented to his checking account in the amount of $7,500.

101.     The reversal of check #148 caused Anuj's checking account to be defaulted. The default triggered action by CCU against Anuj for failure to pay and settle the account in the amount of $7,039.17 by January 29, 2017.

102.     Neither Anuj or Akhil was ever notified why check #148 was reversed.

103.     On February 8, 2017, Sawicki filed a formal complaint with the GPD against Anuj for NSF with respect to checks #5104 and #5108.

11

104.     Sawicki informed GPD that Anuj "stole" an amount of $7,039.17 from CCU.

105.     On February 8, 2017, Anderson submitted a "Bad Check Crime Report" and Sawicki provided it to GPD.

106.     The Report states as follows:

1/18/17   Checks for $10,000 and $7,500 returned NSF

1/24/17   Attempted to contact Mr. Chopra at primary phone number. No answer.

1/24/17   Sent final demand letter.

1/30/17   Collection Department received voicemail from Mr. Chopra.

1/30/17   Jesse Blankenship of CCU spoke with Mr. Chopra who stated account would be in good standing by 2/1/17.

2/2/17    No payments to date.   Collection Dept. received another voicemail from Mr. Chopra.

2/2/17 Attempted to return call.  No answer.  Emailed Mr. Chopra.  No response to date.

107.     GPD Officer Chad Rosema took the original report from Sawicki on February 8, 2017.

108.     According to Rietman's supplemental report to Anuj's NSF fraud complaint, Rietman claims he had contacted Sawicki on February 9, 2017.

109.     Prior to March 1, 2017, Rietman was informed that Anuj's account was settled.

110.     On March 1, 2017, Rietman reported that he spoke with Sawicki regarding Anuj's account. "Sawicki confirmed with her loss prevention that the accounts were never made right by Chopra."

111.     Sawicki informed Rietman that she advised that the bank was out of a total of $6,964.16.

112.     Sawicki said the bank closed Anuj's account that consisted of savings and checking account and that the bank transferred the money from the savings to apply it to the outstanding balance of the checking account. This brought the negative checking account balance of negative $7,039.17 to negative $6,964.16.

113.     Rietman reported that CCU wanted to pursue criminal charges against Anuj instead of turning the matter over to collections.

**D.   Anuj is Criminally Charged with NSF and Human Trafficking Charge Along with NSF Charge Proceed Through the Judicial Process.**

114.     On March 1, 2017, Tamminga, Petroelje, and Reitman appeared in court at Anuj's arraignment on the Human Trafficking charge at the 58th District Court located at 3100 Port Sheldon Street, Hudsonville, Michigan.

115.     The prosecutor in the Human Trafficking case requested that the judge put a high cash bond on Anuj because she said that he was a flight risk because he was a "green card holder" and a citizen of India despite the fact that he resided in the U.S. for more than 35 years.

116.     The prosecutor also cited an active fraud investigation out of Grandville as additional reason to raise Anuj's bond.

13

117.     Additionally, the prosecutor informed the court that I.C.E. from Homeland Security (hereinafter, "I.C.E.") was going to detain Anuj on Immigration Deportation proceedings because of the Human Trafficking charge and the active fraud investigation out of Grandville, Michigan.

118.     Rietman was assigned by GPD to investigate the NSF case against Anuj.

119.     The Ottawa County District Court Judge placed a $250,000 bond on Anuj and Anuj was detained and jailed after the arraignment.

120.     Later in the day on March 1, 2017, Rietman swore out an Affidavit of Probable Cause against Anuj for the NSF charge before Judge Peter Versluis of the 59th District Court located in Grandville, Kent County, Michigan.

121.     Rietman presented the NSF case to the Kent County Prosecutor's office in Kent County, Michigan.

122.     On March 1, 2017, the Kent County prosecutor authorized the charge and arrest for Anuj for NSF.

123.     Anuj was formally charged, arrested and arraigned on the NSF charge in the 59th District Court, Grandville, Michigan.

**E.   Anuj Challenged and Defended Against Deportation because of the Human Trafficking and NSF Charges**

124.     Anuj was originally detained and jailed on the State criminal charges.

125.     Anuj was then detained and jailed (continuously) on an I.C.E. detainer pending resolution on deportation proceedings in Federal Immigration Court.

126.     The Department of Justice (hereafter "D.O.J") lawyer raised the, then pending, Human Trafficking and NSF charge as justification to deport Anuj.

127.    The Federal Immigration Judge suspended Anuj's deportation proceeding pending either conviction on the Human Trafficking or NSF charges.

128.    Anuj was released from I.C.E. detainer on February 22, 2018.

129.    From March 1, 2017 until May 11, 2018, Tamminga, Petroelje, and Rietman actively pursued the criminal charges against Anuj on both the Human Trafficking and NSF cases.

130.    On May 11, 2018, the Ottawa County Prosecutor's Office dismissed the Human Trafficking charge against Anuj. The charges were proven to be baseless and without merit.

**F.   <u>After May of 2018, Anuj Continues to Challenge NSF Case Against Him</u>**

131.    After Anuj's criminal Human Trafficking case was dismissed, Anuj contacted Google to obtain any exculpatory information between himself and CCU, Sawicki, and Grice despite that Anuj's Google Gmail account was previously shut down and no longer accessible so that Anuj could defend against the baseless NSF case.

132.    On November 20, 2018, the Kent County Prosecutor's Office dismissed the NSF case against Anuj because the Kent County Prosecutor's Office was shown that #148 was presented to CCU in a timely manner.

133.    As a condition of the NSF dismissal, Anuj was required to pay CCU, through Grice, $6,964.16.

134.    Anuj paid CCU $6,964.16 prior to the NSF dismissal.

**G.   <u>Google recovers and sent Anuj Emails from CCU Employees Sawicki and Grice Revealing an Improper Conspiracy Among Sawicki, Grice, and Rietman to Fabricate Evidence Against Anuj so that Anuj can be Charged with the NSF Criminal Offense</u>**

15

135.     On April 1, 2019, Google Gmail recovered two (2) emails between Sawicki and Grice generated on February 2, 2017 and February 3, 2017.

136.     These two emails were blind copied to Anuj's Google Gmail account; however, Anuj never received these emails in 2017 or 2018.

137.     In early February 2017, Anuj was experiencing troubles with his Google Gmail account and could not access or use it.

138.     Anuj never received the two (2) blind copied (hereafter, "BCC") emails between Sawicki and Grice.

139.     On April 1, 2019, Google sent Anuj a February 2, 2017 email (hereafter referred to as "2/2/17 email") from Sawicki to Grice:

> **Hi Kris, I spoke to detective Rietman (Grandville Police Department) regarding the following member (Anuj Chopra). He made me aware that the following person is being charged with a human trafficking charge and will be going away for a long time. We at the bank will be helping Ottawa county make their case stronger. Detective Rietman will be at his court appearance on March 1, 2017. The detective is working with Detective Tamminga and deputy Petroelje from Ottawa County and coordinating everything regarding Anuj Chopra. I was also informed he will have a detainer from I.C.E. and will be in jail till his cases will be heard. I know we received a payment from Anuj to settle his account. Will ask detective Rietman if he wants us to return the check to his brother. That will show Anuj did not meet the deadline. Please wait for me to let you know the next step regarding this member. He will be going to prison and we will get rid of one foreigner from our beautiful country.**

16

**Tanya Sawicki**

**Office Manager**

**Granville**

**NMLS #591457**

140.     On April 1, 2019, Google Gmail sent to Anuj, along with the 2/2/17 email, a February 3, 2017 email (hereafter referred to as the "2/3/17 email") from Grice to Sawicki:

> **tanya, got your email. i have reversed the check for $7,500.00 that came to our office on 1/27/17. erased his phone numbers and emails from his profile. no one will be able to get a hold of him. he has too much going on with his other case. this is just the cherry on top of the sundae. also his wife is involved. what a sick couple. lets communicate via telephone. no emails or texts discussing this matter per grandville police department (detective rietman). this will hit the news in the next couple of weeks i hope they give us a shout out at the credit union. (marketing) detective rietman will keep us updated but he will be at anuj's court date on march 1, 2017. that guy will not be coming out of that courtroom. go straight to jail. do not collect 200 rupees.**
>
> **Thank you,**
>
> **Kris Grice**
>
> **Collections Manger,**
>
> **Consumers Credit Union**
>
> **269.488.1766**

**H.  Google Notifies Anuj after Anuj is Jailed on March 1, 2017 that the Email Account, he was Using to Communicate with CCU was Shut Down. Defendants**

17

**are Directly Connected to the Locations Where Devices Were Used to Shut Down Anuj's Email Account.**

141.    On July 22, 2019, Google sent Anuj a letter stating that Google verified and confirmed that Anuj's email account, achopra1975@gmail.com (hereinafter referred to as "1975 email account"), was notified on March 1, 2017 that Anuj's 1975 email account was shut down and closed on February 9, 2017.

142.    The July 22, 2019 letter from Google explained that Anuj's 1975 email account was shut down because the account was compromised by several devices.

143.    Between February 4, 2017 and March 1, 2017, eight (8) unauthorized devices attempted to gain access to the 1975 email account, thereby shutting it down and rendering the account inaccessible per Google's policy.

144.    Google informed Anuj that on February 4, 2017 at 9:37 a.m., a Windows phone located at 4350 S.W. 44th Street, Grandville, Michigan, attempted to sign into the 1975 email account. Sawicki worked at this location during this time.

145.    Google informed Anuj that on Saturday, February 4, 2017 at 12:49 p.m., an Apple iPhone located in Kalamazoo, Michigan attempted to sign into the 1975 email account. Grice worked and lived in Kalamazoo, Michigan during this time.

146.    Google informed Anuj that on Monday, February 6, 2017 at 3:21 p.m., a Windows phone located at 3195 Wilson Ave., SW, Grandville, Michigan, attempted to sign into the 1975 email account. Grandville City Clerk's Office is located at this location, which is directly next to GPD. Rietman worked for GPD during this time.

147.    Google informed Anuj that on Thursday, February 9, 2017 at 9:03 a.m., an Apple iPhone located at 5037 32nd Ave., Hudsonville, Michigan, attempted to sign into the 1975 email account. Petroelje worked at HHS at this location during this time.

148.    Google informed Anuj that on Thursday, February 9, 2017 at 4:49 p.m., an Apple iPhone located at 3100 Port Sheldon Street, Hudsonville, Michigan, attempted to sign into the 1975 email account. The 58th District Court, Hudsonville, is located at this location.

149.    Google informed Anuj that on Monday, February 6, 2017 at 3:21 p.m., a Windows phone located at 3195 Wilson Ave., SW, Grandville, Michigan, attempted to sign into the 1975 email account.

150.    Google informed Anuj that on Wednesday, March 1, 2017 at 4:49 p.m., an Apple iPhone located at 3100 Port Sheldon Street, Hudsonville, Michigan, attempted to sign into the 1975 email account. The 58th District Court, Hudsonville, is located at this location.

151.    Google informed Anuj that on Wednesday, March 1, 2017 at 8:27 a.m., a windows phone located at 3100 Port Sheldon Street, Hudsonville, Michigan, attempted to sign into the 1975 email account. The 58th District Court, Hudsonville, is located at this location.

152.    On March 1, 2017, Tamminga, Petroelje, and Rietman were at the 58th District Court for Anuj's arraignment on his Human Trafficking charge.

153.    Google sent notification that the 1975 email account was closed after Anuj was jailed on March 1, 2017.

154.    Anuj was not released from custody almost one year later on February 22, 2018.

I.   **Defendants Acted in Concert and Conspired to Fabricate Inculpatory Evidence, withheld Exculpatory Evidence, and Manufactured a Criminal Felony Offense against Anuj; then Defendants Fraudulently Concealed Their Conduct**

19

155.     On February 2, 2017 and February 3, 2017, Sawicki, Grice, and Rietman conspired to return and reverse #148 for $7,500.00 that had ben presented, accepted, and paid by Anuj to settle this account on January 27, 2017; two (2) days before the default deadline date.

156.     Defendants agreed to increase the likelihood of prosecution and conviction of Anuj on the Human Trafficking charge by manufacturing a fraud bad check case, NSF, case against him.

157.     Defendants agreed to reverse #148 for $7,500.00 that had been timely paid to put Anuj's overdrawn checking account in default so Defendants could fraudulently pursue criminal charges against him.

158.     Defendants were acutely aware of and knew that by reversing #148 after it was timely paid and after the default date was triggered; Anuj's checking account would reflect an unpaid negative balance.

159.     Defendants conspired and agreed that Anuj did not pay to settle his account. Defendants fraudulently represented in the bad check crime report, police report, and in the Affidavit of Probable Cause to arrest and charge Anuj for NSF, that Anuj never paid to settle his account.

160.     Defendants withheld exculpatory information that Anuj had timely settled and paid on his overdrawn account from the District Court Judge who issued the Affidavit of Probable Cause and the Kent County Prosecutor who ultimately authorized the arrest, charge, and detention of Anuj.

161.     Defendants acted in concert and conspired against Anuj by providing false information, withholding exculpatory information, and acting maliciously, recklessly, and with gross negligence.

162.     Defendants acted in concert and conspired to conceal their improper conduct by erasing Anuj's phone numbers and emails from his profile at CCU, so that no one could contact him from CCU.

163.     Defendants acted in concert and conspired to conceal their improper conduct by agreeing to not communicate with each other by email or text message.

164.     Defendants agreed to communicate with each other only by telephone.

165.     Defendants agreed not to leave a "paper trail" regarding their improper, fraudulent, and reckless wanton conduct so that they could avoid detection regarding their scheme and at the same time pursue and maintain criminal charges against Anuj.

166.     To Anuj's information and belief, Defendants acted in concert and conspired to shutdown Anuj's 1975 email account to conceal their fraudulent scheme to criminally charge Anuj by attempting numerous times to access his account with different unauthorized devices from different locations.

167.     To Anuj's information and belief, Defendants caused Anuj's 1975 email account to close while Defendants were at or near locations where the Defendants were either employed at that time or were known to be present at that time at that location.

168.     To Anuj's information and belief:

   a.   On February 2, 2017 and February 3, 2017, Rietman, Sawicki, and Grice conspired to reverse check #148 and agreed to pursue criminal charges against Anuj to help Ottawa County with their Human Trafficking Case;

   b.   Defendants' goal was to have Anuj convicted of Human Trafficking and NSF and then have him deported back to India.

   c.   Defendants agreed not to leave a paper trail by only communicating by phone and not by email or text messaging so they could conceal their scheme and avoid detection.

21

d.  Between February 4, 2017 and February 9, 2017, Defendants attempted to access Anuj's 1975 email account, shut it down, and render the account inaccessible.

e.  On February 7, 2017, Sawicki contacts GPD and requests copies of a bad check form to complete.

f.  On February 8, 2017, Sawicki files a formal police complaint against Anuj, alleging fraud and that he never paid or settled his account with CCU.

g.  On February 8, 2017, Sawicki gives Anderson's "bad check form" statement to GPD stating that Anuj never paid on his overdrawn account.

h.  On February 9, 2017, Rietman receives a fraud report from GPD officer Rosema to follow up on the investigation.

i.  Rietman says he has contact with Sawicki on February 9, 2017, and reports that Sawicki says that Anuj "stole" $7,039.17 from CCU and never paid it back.

j.  After meeting with Sawicki on February 9, 2017, Rietman pursues an arrest warrant through the Kent County Prosecutor's Office. The Prosecutor's Office declines and directed Rietman to follow up and talk with Anuj.

k.  On March 1, 2017 and after Anuj is jailed, Rietman meets with Sawicki. Rietman reports that Sawicki said that Anuj never paid and that CCU wants to press criminal charges.

l.  On March 1, 2017, District Court Judge signed the Affidavit of Probable Cause to arrest Anuj.

m.  On March 1, 2017, Kent County Prosecutor's Office authorizes criminal charge, arrest, and detention of Anuj on the NSF felony charge.

22

**J.**  **Defendants Discriminated against Anuj based on his National Origin by Defendants Actions and Statements Designed to Humiliate, Punish, and Cause Anuj to be Deported back to India.**

169.    Sawicki interacted with Anuj at the CCU Grandville branch on many occasions.

170.    Sawicki knew or should have known that Anuj is a person of color and from India.

171.    Sawicki made discriminating statements against Anuj based on his national origin:

**He will be going in prison and we will get rid of one foreigner from our beautiful county.**

172.    Sawicki acted in concert and conspired against Anuj to have him falsely charged with a crime designed to punish him by putting him in prison and getting rid of him by causing Anuj to be deported out of the U.S.A. because of his national origin.

173.    Defendants acted in concert and conspired against Anuj based on his national origin by closing down his CCU account without legal excuse, right, or justification.

174.    Grice made discriminatory statements against Anuj based on his national origin:

**go straight to jail. do not collect 200 rupees.**

175.    A Rupee is defined as the basic monetary unit of India.

176.    Defendants acted in concert and improperly conspired and discriminated against Anuj by fabricating evidence against him and manufacturing a criminal offense against him based off of his national origin.

177.    Defendants knew that Anuj would be detained by I.C.E. because of the Human Trafficking charge and provided additional information to the 58th District Court at his Human Trafficking arraignment that further empowered I.C.E. to place a detainer on him.

23

178.    To Anuj's information and belief, Defendants pursued criminal charges against him to the extent that Defendants aim was to have Anuj formally criminally charged for NSF before his scheduled arraignment on March 1, 2017.

179.    Rietman, first, applied for criminal charges against Anuj for NSF on February 9, 2017. Defendants knew and discussed that Anuj's Human Trafficking arraignment date was on March 1, 2017.

180.    To Anuj's information and belief, Defendants fraudulently concealed their conduct of discrimination against Anuj based on his national origin by erasing emails and text messages from their work place computers and phones. Also, Defendants shut down Anuj's email to prevent him from accessing his 1975 email account so Anuj could not detect and discover Defendants' discriminatory actions and statements against him.

### K.    Additional Common Allegations

181.    The acts of individual Defendants alleged in this Complaint represent official policy and custom of and are attributable to the Defendant entities for which such individuals worked, including under the doctrine of respondent superior.

182.    The acts complained of were under color of state law and undertaken in concert among the named Defendants.

183.    Supervisory officials having final policymaking authority for each of the Defendant entities named in this Complaint had knowledge of the conduct complained of.

184.    With regard of each and every one of the constitutional deprivations alleged below, it would have been plainly obvious to a reasonable policymaker that the conduct described did deprive or would lead to the deprivation of Anuj's constitutional rights.

185.    Upon information and belief, supervisory officials having final policymaking authority for each Defendant entities named in this Complaint nevertheless agreed to, approved, and ratified the unconstitutional conduct alleged.

186.    The Defendant entities, by and through their supervisory officials having final policymaking authority, further failed to train the individual named Defendants. This failure to train led directly to the constitutional deprivation alleged below.

187.    Upon information and belief, the Defendant entities also failed to intervene in a custom of their employees of violating individuals' constitutional rights. This failure to train led directly to constitutional deprivations alleged below.

## LEGAL CLAIMS ARISING UNDER FEDERAL LAW

**COUNT I:      VIOLATION OF 42 U.S.C. § 1983 – FOURTH AND FOURTEENTH AMENDMENT RIGHTS**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT DARIN RIETMAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY)**

188.    Anuj incorporates paragraphs 1 through 187 of this Complaint.

189.    Anuj had the right to be protected from unreasonable search and seizure, guaranteed by the Fourth Amendment to the United Stated Constitution, and incorporated against the States by the Fourteenth Amendment.

190.    Defendant Rietman violated Anuj's constitutionally protected right against unreasonable search and seizure in multiple ways, including but not limited to:

    a.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference by acting in concert and conspiring with Defendants to charge Anuj with a crime;

    b.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence to obtain an arrest warrant without probable case;

    c.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence to obtain an arrest warrant without probable cause; and

    d.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information to obtain an arrest warrant without probable cause.

191.    As a direct and foreseeable consequence of the actions of Defendant Rietman, Anuj was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT II:**    **VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHTS**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT DARIN RIETMAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY)**

192.    Anuj incorporates paragraphs 1 through 191 of this Complaint.

193.    Anuj had a right to fair and equal treatment under the law, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

194.    Defendant Rietman violated this right in multiple ways, including but not limited to:

    a.   By intentionally singling out and treating Anuj less favorable than other similarly situated person, without a rational basis for that treatment;

    b.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference acted in concert to manufacture a crime against Anuj;

    c.   Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence to obtain an arrest warrant without probable case;

26

d. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence to obtain an arrest warrant without probable cause; and

e. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information to obtain an arrest warrant without probable cause.

195.     As a direct and foreseeable consequence of the actions of Defendant Rietman, Anuj was deprived of his rights under the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT III:      VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS AND SIXTH AMENDMENT FAIR TRIAL RIGHTS**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT DARIN RIETMAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY)**

196.     Anuj incorporates paragraphs 1 through 195 of this Complaint.

197.     Anuj had the right to a fair trial and to be protected from deprivation of life, liberty or property, without due process of law, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

198.     Defendant Rietman violated Anuj's constitutionally protected due process and fair trial rights in multiple ways, including but not limited to:

a. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference by conducting an improper investigation;

b. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence to obtain an arrest warrant without probable case;

     c.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence to obtain an arrest warrant without probable cause; and

     d.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information to obtain an arrest warrant without probable cause.

199.    As a direct and foreseeable consequence of the actions of Defendant Rietman, Anuj was deprived of his due process and fair trial rights under the Sixth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

### COUNT IV:    VIOLATION OF 42 U.S.C. § 1983 – MALICIOUS PROSECUTION

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT DARIN RIETMAN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY)**

200.    Anuj incorporates paragraphs 1 through 199 of this Complaint.

201.    Criminal proceedings were instituted against Anuj and furthered by the illegal and unconstitutional actions of Defendant Rietman.

202.    Such proceedings were terminated in favor of Plaintiff.

203.    Defendant Rietman does not have an absolute prosecutorial immunity for his conduct in the criminal prosecution of Anuj.

204.    Defendant Rietman had no probable cause for the initiation or maintenance of the criminal prosecution of Anuj.

205.    Defendant Rietman intentionally influenced or participated in the initiation or the maintenance of the criminal prosecution of Anuj.

206.     Defendant Rietman's actions were done with malice; that is they were done for a purpose other than that of securing the proper adjudication of the claim.

207.     Persons in Defendant Rietman's position would have known that the facts and circumstances alleged in the criminal proceedings were not sufficient to justify a reasonable belief that Anuj had committed the offenses with which he was charged.

208.     As a direct and foreseeable consequence of the actions of Defendant Rietman, Anuj was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT V:**     **VIOLATION OF 42 U.S.C. § 1983 – UNCONSTITIONAL POLICY, CUSTOM, OR PRACTICE OF FAILING TO TRAIN OR SUPERVISE**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CITY OF GRANDVILLE)**

209.     Anuj incorporates paragraphs 1 through 208 of this Complaint.

210.     Defendant Rietman, while acting under color of state law, violated Anuj's constitutional rights as set forth above.

211.     Upon information and belief, Defendant City of Grandville created and maintained an official custom, practice, and/or policy of failing adequately to train and supervise its employees and agents, including but not limited to Defendant Rietman, regarding proper investigative techniques, the assessment of probable cause, obtaining warrants, the obligation to testify truthfully and avoid fabricating evidence, the disclosure of exculpatory evidence, obtaining accurate statements, and other recurring situation.

29

212.    The individual Defendants' unconstitutional and unlawful conduct complained of herein would not have occurred in the absence of gross and wanton deficiencies in police training and supervision.

213.    Upon information and belief, the Defendant City of Grandville knew or had notice of the unlawful tactics of Defendant Rietman, and knew or should have known that constitutional violations were likely to result without appropriate training and supervision. Yet, despite the obvious need for appropriate training and supervision, Defendant City of Grandville failed to take any corrective action that would have averted Anuj's false arrest and criminal charges.

214.    Defendant City of Grandville's official custom, practice, and/or policy of failing adequately to train and supervise it employees and agents as described above constituted deliberate indifference to Anuj's constitutional rights.

215.    Defendant City of Grandville promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard and deliberate indifferent for the civil and constitutional rights, privileges and sensibilities of Anuj.

216.    As a direct and proximate result of Defendant City of Grandville's official custom, practice, and/or policy of failing adequately to train and supervise Defendant Rietman, Anuj was subject to false arrest, unlawfully suppressed exculpatory evidence, fabricated evidence, and a conspiracy to deny his constitutional rights to due process, equal protection, and a fair trial. These violations of Anuj's constitutional rights would not have occurred had Defendant City of Grandville adequately trained and supervised Defendant Rietman.

217.    As a direct and proximate result of Defendant City of Grandville's acts, policy decisions, failure to train, and failure to intervene in a custom of violating individuals'

30

constitutional rights, Anuj was deprived of his constitutional rights and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT VI:** **VIOLATION OF 42 U.S.C. § 1983 – FOURTH AND FOURTEENTH AMENDMENT RIGHTS**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CONSUMERS CREDIT UNION AND AGAINST DEFENDANTS TANYA SAWICKI AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

218.     Anuj incorporates paragraphs 1 through 217 of this Complaint.

219.     Anuj had the right to be protected from unreasonable search and seizure, guaranteed by the Fourth Amendment to the United States Constitution, and incorporated against the States by the Fourteenth Amendment.

220.     Defendants CCU, Sawicki, and Grice violated Anuj's constitutionally protected right against unreasonable search and seizure in multiple ways, including but not limited to:

    a.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference manufacturing a false crime against Anuj for NSF;

    b.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence so police could obtain an arrest warrant without probable case;

    c.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence so police could obtain an arrest warrant without probable cause; and

    d.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information so police could obtain an arrest warrant without probable cause.

31

221.    As a direct and foreseeable consequence of the actions of Defendants CCU, Sawicki, and Grice, Anuj was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT VII:    <u>VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHTS</u>**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CONSUMERS CREDIT UNION AND DEFENDNANTS TANYA SAWICKI AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

222.    Anuj incorporates paragraphs 1 through 221 of this Complaint.

223.    Anuj had a right to fair and equal treatment under the law, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

224.    Defendants CCU, Sawicki, and Grice violated this right in multiple ways, including but not limited to:

a. By intentionally singling out and treating Anuj less favorable than other similarly situated person, without a rational basis for that treatment;

b. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, manufacturing a criminal case against Anuj;

c. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence so police could obtain an arrest warrant without probable case;

d. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence so police could obtain an arrest warrant without probable cause; and

e. Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information so police could obtain an arrest warrant without probable cause.

225.    As a direct and foreseeable consequence of the actions of Defendants CCU, Sawicki, and Grice, Anuj was deprived of his rights under the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT VIII:   VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS AND SIXTH AMENDMENT FAIR TRIAL RIGHTS**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CONSUMERS CREDIT UNION AND AGAINST DEFENDANTS TANYA SAWICKI AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

226.    Anuj incorporates paragraphs 1 through 225 of this Complaint.

227.    Anuj had the right to a fair trial and to be protected from deprivation of life, liberty or property, without due process of law, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

228.    Defendants CCU, Sawicki, and Grice violated Anuj's constitutionally protected due process and fair trial rights in multiple ways, including but not limited to:

   a.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference manufacturing a criminal charge against Anuj;

   b.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, fabricating evidence so police could obtain an arrest warrant without probable case.

   c.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, withholding exculpatory evidence so police could obtain an arrest warrant without probable cause.

   d.  Intentionally, recklessly, with wanton and reckless disregard, or with deliberate indifference, providing false and misleading information so police could obtain an arrest warrant without probable cause.

229.     As a direct and foreseeable consequence of the actions of Defendants CCU, Sawicki, and Grice, Anuj was deprived of his due process and fair trial rights under the Sixth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT IX:     VIOLATION OF 42 U.S.C. § 1983 – MALICIOUS PROSECUTION**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CONSUMERS CREDIT UNION AND AGAINST DEFENDANTS TANYA SAWICKI AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

230.     Anuj incorporates paragraphs 1 through 229 of this Complaint.

231.     Criminal proceedings were instituted against Anuj and furthered by the illegal and unconstitutional actions of Defendants CCU, Sawicki, and Grice.

232.     Such proceedings were terminated in favor of Plaintiff.

233.     Defendants CCU, Sawicki, and Grice do not have an absolute prosecutorial immunity for their conduct in the criminal prosecution of Anuj.

234.     Defendants CCU, Sawicki, and Grice had no probable cause for the initiation or maintenance of the criminal prosecution of Anuj.

235.     Defendants CCU, Sawicki, and Grice intentionally influenced or participated in the initiation or the maintenance of the criminal prosecution of Anuj.

236.     The actions of Defendants CCU, Sawicki, and Grice were done with malice; that is they were done for a purpose other than that of securing the proper adjudication of the claim.

237.    Persons in Defendants CCU, Sawicki, and Grice's position would have known that the facts and circumstances alleged in the criminal proceedings were not sufficient to justify a reasonable belief that Anuj had committed the offenses with which he was charged.

238.    As a direct and foreseeable consequence of the actions of Defendants CCU, Sawicki, and Grice, Anuj was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT X:      VIOLATION OF 42 U.S.C. § 1983 – CONSPIRACY**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

239.    Anuj incorporates paragraphs 1 through 238 of this Complaint.

240.    Defendants knew of should have known that Anuj had not committed a NSF charge. Nonetheless, acting in concert and under color of state law, Defendants conspired intentionally and in bad faith to violate Anuj's clearly established constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

241.    In furtherance of this conspiracy, Defendants engaged in the following overt acts, as described above:

    a.  Defendants conspired to fabricate evidence.

    b.  Defendants conspired to provide false testimony, fabricate evidence, and misleading information, to obtain an arrest warrant without probable cause.

    c.  Defendants conspired to suppress and/or conceal exculpatory evidence.

    d.  Defendants conspired to initiate, maintain and further, criminal proceedings against Anuj.

242. The actions of the Defendants violated 42 U.S.C. § 1983.

243. As a direct and foreseeable consequence of the conspiratorial actions of Defendants, Anuj was deprived of his constitutional rights and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XI:    VIOLATION OF 42 U.S.C. § 1983 – CONCEALMENT**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

244. Anuj incorporates paragraphs 1 through 243 of this Complaint.

245. Defendant knew or should have known that Anuj had not committed the NSF charge but rather paid and settled his account in a timely manner. Nonetheless, acting in concert, and under color of state law, Defendants conspired intentionally and in bad faith to violate Anuj's clearly established constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

246. Defendants knew of should have known that they were intentionally and in bad faith concealing their improper conduct.

247. In furtherance of their concealment, Defendant's engaged in the following acts as describe above:

    a. Defendants concealed their plan fraudulently.

    b. Defendants conspired to suppress and/or conceal exculpatory evidence.

    c. Defendants concealed their plan against Anuj, the court, and the prosecutor to provide false testimony, fabricated evidence, and misleading information to obtain an arrest warrant without probable cause.

36

    d.   Defendants concealed their improper plan to initiate, maintain, and further, criminal proceedings against Anuj.

248.    The actions of the Defendants violated 42 U.S.C. § 1983.

249.    As a direct and proximate result of the improper plan to conceal the conspiratorial actions of Defendants, Anuj was deprived of his constitutional rights and thereby suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XII:**    <u>**VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT AND EQUAL PROTECTION RIGHTS, DISCRIMINATION BASED ON NATIONAL ORIGIN**</u>

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

250.    Anuj incorporates paragraphs 1 through 249 of this Complaint.

251.    Defendants knew or should have known that Anuj is a person of color and is a descendent of India.

252.    Anuj had a right to fair and equal treatment, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

253.    Defendants violated Anuj's right and discriminated against Anuj based on his National Origin, including but not limited to:

    a.   By intentionally humiliating, embarrassing, denegrating Anuj based on his National Origin.

    b.   Intentionally, recklessly, with wanton and reckless disregard or with deliberate indifference, by fabricating evidence, suppressing exculpatory evidence related to the criminal charges against Anuj.

    c.   By manufacturing a criminal case against Anuj based on his National Origin.

d. By suppressing exculpatory evidence and presenting false evidence based on Anuj's National Origin.

e. By causing intentionally, recklessly, with wanton and reckless disregard that Anuj was charged with a criminal felony offense based on Defendant's discriminatory practices based on Anuj's National Origin.

254. As direct and proximate result of Defendants' discriminatory actions against Anuj and based on his National Origin, Defendants' deprived Anuj of his rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and thereby suffered loss of liberty, confinement, pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial loss and damages, and any other injuries and damages that may arise during the course of discovery.

## LEGAL CLAIMS ARISING UNDER STATE LAW

**COUNT XIII:** **DEPRIVATION OF RIGHTS UNDER MICHIGAN'S CONSTITUTION**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

255. Anuj incorporates paragraphs 1 through 254 of this Complaint.

256. Anuj has rights under the Michigan Constitution, including but not limited to:

a. To be free from unreasonable seizure.

b. To be free from deprivation of his liberty interests without due process of law.

c. To fair and just treatment in the course of an investigation.

d. To be afforded equal protection of the law.

257. Defendants, by virtue of custom and policy and under color of law, violated Anuj's rights conferred by the Michigan Constitution by, among other things:

a.   Subjecting him to unreasonable search and seizure without probable cause.

b.   Depriving him of his liberty interests without due process of law.

c.   Denying him fair and just treatment in the course of an investigation.

d.   Denying him equal protection of the law.

258.   The foregoing acts were intentional, unlawful, unprivileged, and without protection of any immunity.

259.   As a direct and proximate cause of Defendants' actions in violation of Anuj's constitutional rights, Anuj suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XIV:   INTENTIONAL   INFLICTION   OF   EMOTIONAL DISTRESS**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

260.   Anuj incorporates paragraphs 1 through 259 of this Complaint.

261.   Defendants' conduct as outlined above was intentional or reckless.

262.   Defendants' conduct as outlined above was extreme, outrageous, and beyond all bound of decency, and of such a character as to be intolerable in a civilized society.

263.   Defendants' conduct was not for any proper purpose, nor was it within the scope of Defendants' authority.

264.   Defendants' conduct caused severe and serious emotional distress of Anuj.

265.   Defendants' conduct in this matter was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Anuj's physical and emotional wellbeing.

39

266.     As a direct and proximate cause of Defendants' conduct, Anuj suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XV:     FALSE ARREST**

**(ASSERTED BY ANUJ CHOPRA AGAINST DEFENDANT CITY OF GRANDVILLE)**

267.     Anuj incorporates paragraphs 1 through 266 of this Complaint.

268.     Officers of Grandville Police Department, which is operated, managed and overseen, by Defendant City of Grandville, arrested Anuj and further caused Anuj's confinement and deprived him of his personal liberty and freedom of movement.

269.     Anuj was conscious of his confinement at all relevant times.

270.     Defendant City of Grandville's actions were intentional and directly resulted in arrest and actual confinement of Anuj.

271.     Anuj's arrest was unlawful and Defendant City of Grandville's actions were not for any proper purpose, nor could Defendant City of Grandville have reasonably believed they were for a proper purpose.

272.     Defendant City of Grandville's actions were not privileged.

273.     The imprisonment and restraint were against Anuj's will.

274.     Officers under the control and supervision of Defendant City of Grandville accomplished the arrest and confinement by force, show of force, and physical confinement, and the deprivation of Anuj's liberty and freedom were intentional, unlawful, unprivileged, and without probable cause.

40

275.   Defendant City of Grandville's conduct in this matter was grossly negligent because it was so reckless that it demonstrated a substantial ack of concern for Anuj's physical and emotional wellbeing.

276.   As direct and proximate cause of Defendants City of Grandville's conduct, Anuj suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XVI:    <u>MALICIOUS PROSECUTION</u>**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

277.   Anuj incorporates paragraphs 1 through 276 of this Complaint.

278.   Criminal proceedings against Anuj were instituted and further by the Defendants.

279.   Such proceedings were terminated in favor of Anuj.

280.   Defendants maliciously initiated and continued the prosecution of Anuj without probable cause to believe a crime had been committed.

281.   Defendants maliciously initiated and continued the prosecution of Anuj without any evidence or cause to support such an action.

282.   Defendants' actions were done with malice; that is, they were done for a purpose other than that of securing the proper adjudication of the claim.

283.   Defendants' actions were not for any proper purpose, nor could the Defendants have reasonably believed they were for a proper purpose. Their actions were not privileged.

284.     Defendants' conducted in this matter was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Anuj's physical and emotional wellbeing.

285.     Pursuant to M.C.L. § 600.2907, Defendants are liable for treble damages, attorney's fees and costs.

286.     As a direct and proximate cause of Defendants' conducts, Anuj suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

**COUNT XVII:   GROSS NEGLIGENCE**

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

287.     Anuj incorporates paragraphs 1 through 286 of this Complaint.

288.     Defendants were required by law to perform their duties carefully, not omitting what an ordinarily prudent person would of in their positions in accomplishing their undertaking.

289.     Defendants breached said duty in multiple ways, including but not limited to, by violating Anuj's constitutional rights, by: 1) arresting Anuj without probable cause; 2) initiating and continuing criminal prosecution against Anuj without probable cause; 3) fabricating inculpatory evidence; and 4) withholding exculpatory evidence.

290.     Defendants acted either intentionally or with gross negligence and, therefore, are not entitled to governmental immunity under M.C.L. § 600.1407.

291.     As direct and proximate cause of Defendants' conduct, Anuj suffered pain, emotional distress, humiliation, mortification, imprisonment, embarrassment, financial damages, and any other injuries and damages that may arise during the course of discovery.

### COUNT XVIII: <u>DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF THE MICHIGAN CONSITUTION</u>

**(ASSERTED BY ANUJ CHOPRA AGAINST ALL DEFENDANTS INCLUDING DEFENDANTS DARIN RIETMAN, TANYA SAWICKI, AND KRISTOPHER GRICE, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITY)**

292.     Anuj incorporates paragraphs 1 through 291 of this Complaint.

293.     Anuj has rights under the Michigan Constitution, including but not limited to:

  a. To be afforded equal protection under the law.

  b. To not be discriminated against because of the color of his skin and National Origin.

294.     Defendants, by virtue of customs and policy under color of the law, violated Anuj's rights conferred by the Michigan Constitution, by, among other things:

  a. Subjecting him to unreasonable arrest and seizure without probable cause.

  b. Depriving him of fair and just treatment during the course of a criminal investigation.

  c. Denying him equal protection of the law.

  d. Depriving him of liberty interest and due process of law.

295.     The foregoing acts were intentional, unlawful, not privileged, and without protection from any immunity.

296.     As direct and proximate cause of the Defendants' action in violation of Anuj's constitutional rights, Anuj suffered pain, emotional distress, humiliation, mortification,

imprisonment, embarrassment, financial loss and damages, and any other damages that might arise during the course of discovery.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, Anuj Chopra, requests that this Court grant him the following forms of relief as against Defendants:

a. That this Court enters a money judgement against Defendants, joint and severally, for compensatory damages (including, but not limited to, an amount to compensate Anuj Chopra for past and future mental anguish, past and future pain and suffering, past and future damages to his reputation, past and future lost wages and lost earning capacity, and expenses and costs incurred for legal representation in connection with the criminal charges in whatever amount is shown to be established by the proofs in this cause.

b. That this Court enter a money judgement against the Defendants, joint and severally, in favor of Anuj Chopra, for exemplary damages in whatever amount is shown to be established by the proofs in this cause.

c. That this Court enter a money judgement against the Defendants, joint and severally, in favor of Anuj Chopra, for treble damages pursuant to M.C.L. § 600.2907 in whatever amount is shown to be established by the proofs in this cause.

d. That this Court enter a money judgement against the Defendants, joint and severally, in favor of Anuj Chopra, for punitive damages in whatever amount is shown to be established by the proofs in this cause.

e. That this Court enter an award against the Defendants, joint and severally, for Anuj Chopra's attorney fees and cost incurred in connection to prosecuting this case (pursuant to 42 U.S.C. §§ 1983 and 1988, and M.C.L. § 600.2907; and any other applicable law).

f. That this Court enter an award against the Defendants, joint and severally, for pre-complaint interest, pre-judgement interest, and post-judgement interest.

g. That this Court award such other relief as may be just and necessary, so as to make Anuj Chopra whole.

## **JURY DEMAND**

Plaintiff, Anuj Chopra, requests a trial by jury.

<u>/s/ Damian D Nunzio</u>
DAMIAN D NUNZIO (P47319)
THE NUNZIO LAW FIRM, P.C.
Attorney for Plaintiff
29 Pearl Street, NW, Suite 415
Grand Rapids, Michigan 49503
(616) 336-8100

Dated: February 2, 2020